# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **JULY 13, 2016**

**NO. 34,083**

**MARVIN ARMIJO,**

     Plaintiff-Appellee,

v.

**CITY OF ESPAÑOLA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Judge**

Serra & Garrity, P.C.
Diane Garrity
Santa Fe, NM

Kegel Law Offices
Margaret Kegel
Santa Fe, NM

for Appellee

Miller Stratvert P.A.
Virginia Anderman
Albuquerque, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

{1}      Appellant, the City of Española (the City), appeals from a judgment in favor of Plaintiff, Marvin Armijo. After the City's grievance board determined that the City had just cause to terminate Armijo, Armijo appealed the grievance board's decision in district court. While that appeal was pending, Armijo also filed a separate complaint against the City in district court alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The district court entered a judgment in favor of Armijo on the breach of contract claim. The administrative appeal was dismissed by the district court.

{2}      The City appeals from the district court's judgment, arguing that: (1) Armijo's breach of contract claim was barred by the doctrine of claim preclusion; (2) the district court erred in allowing Armijo to bring a claim for breach of implied employment contract because Armijo had not yet exhausted his administrative remedies; and (3) the district court erred in considering issues related to the collective bargaining agreement between the City and the police union. We hold that Armijo was barred from bringing the separate claim for breach of contract in the district court and reverse.

**BACKGROUND**

{3}     In 2008 Armijo was employed as a police officer for the City. In September 2008 Armijo received a payroll deposit, which included a miscellaneous payment in the amount of $2,399.52. In the spring of 2009, the unexplained deposit came to light during an audit of the City's payroll records. The City's finance director discovered unexplained payroll disbursements. Concerning Armijo's miscellaneous payment, Armijo's supervisor determined that Armijo was authorized to receive $958.49 of the $2,399.52 due to a retroactive pay increase. However, the remaining $1,441.03 was considered an unauthorized overpayment. In July 2009, Armijo was terminated for failing to report and repay the overpayment.

{4}     Armijo appealed pursuant to the City's grievance policy. Following a hearing, a grievance board hearing officer upheld the decision to terminate Armijo's employment. In November 2009, Armijo appealed that decision to the district court pursuant to Rule 1-074 NMRA (governing appeals to the district court of administrative agency decisions when there is a statutory right to appeal).

{5}     In August 2011 Armijo filed this separate action against the City for, among other things, breach of contract. In June 2012 Armijo amended his complaint alleging breach of implied contract and breach of the covenant of good faith and fair dealing. Twice the district court denied motions by the City to stay the proceedings in the

2

breach of contract suit due to the pending administrative appeal. Following a trial on the merits, the district court found that the City breached its implied contract with Armijo by failing to provide correct notice regarding his hearing rights, and by failing to follow its internal policies, which required the City to initiate an internal affairs investigation. The district court entered judgment in favor of Armijo on the breach of contract claim and awarded Armijo approximately $40,000 in lost wages and $10,000 in consequential damages.

{6} Armijo filed a motion for reinstatement in the pending administrative appeal, arguing that the district court's judgment in the contract action was binding in the administrative appeal under the doctrine of issue preclusion. In his motion, Armijo seeks reinstatement to his former position as well as restoration of his retirement benefits and lost wages. The City is appealing the district court's judgment in favor of Armijo on his contract claim.

**DISCUSSION**

**Claim Preclusion**

{7} As a preliminary matter we briefly address the City's argument that we must determine whether Armijo exhausted his administrative remedies before we can determine whether Armijo's contract claim is barred under the doctrine of claim preclusion. The City asserts that Armijo's administrative remedies have not been

3

exhausted since the administrative appeal is still pending in district court. The City argues that because the issues raised in Armijo's contract claim are the same as the issues raised in the pending administrative appeal, the district court should not have allowed Armijo to proceed with his contract claim until a final decision was issued in the administrative appeal. Armijo contends that his administrative remedies were exhausted once the grievance board's decision was issued, citing the City's personnel handbook, which provides that the grievance board's decision is the final step in the administrative process.

{8} We need not decide whether or at what point Armijo exhausted his administrative remedies because, for the purposes of claim preclusion, the grievance board's decision is considered a final judgment. *See Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 12, 115 N.M. 293, 850 P.2d 996 (holding that a court may apply claim preclusion to decisions of administrative or quasi-judicial bodies acting within the scope of their authority); *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶ 19, 124 N.M. 479, 952 P.2d 474 (holding that a decision by the city's grievance board was a final judgment for purposes of precluding a municipal employee's subsequent contract claim).

{9} Our application of claim preclusion in this case focuses instead on whether Armijo has had a full and fair opportunity to litigate issues arising out of his claims.

4

*See Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87 ("[Claim preclusion] precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." (internal quotation marks and citation omitted)). The purpose of applying claim preclusion "is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments." *Moffat v. Branch*, 2002-NMCA-067, ¶ 14, 132 N.M. 412, 49 P.3d 673. A party asserting claim preclusion "must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54.

{10} There is no question that the parties in the administrative action and the contract action are the same. And as we previously discussed, for the purposes of claim preclusion, the grievance board decision is a final judgment on the merits. Thus, at issue here is whether the cause of action is the same in both proceedings. To answer this question "we apply the transactional test from the Restatement (Second) of Judgments § 24(2) (1982)." *Chavez*, 1998-NMCA-004, ¶ 22. "This approach disregards the specific legal theories or claims that were or were not invoked in a prior action[.]" *Moffat v. Branch*, 2005-NMCA-103, ¶ 17, 138 N.M. 224, 118 P.3d 732. Instead, we "engage in a pragmatic assessment of the transaction, with a

'transaction' being described as a natural grouping or common nucleus of operative facts." *Id.* (internal quotation marks and citation omitted).

{11} Here, the operative facts of both actions are centered around the terms and conditions of Armijo's employment and the circumstances surrounding his termination. As the basis for his contract claim, Armijo asserted that the City, through its policies and procedures, created an implied contract, and that the City breached the implied contract when it failed to follow its own policies and procedures during the disciplinary and termination process. Specifically, Armijo claimed that the City dismissed him without just cause and that the City breached its implied contract with him by: failing to address his claim that he thought the money was properly deposited in connection with a retroactive pay differential; failing to conduct an internal investigation concerning the deposit; failing to notify him of the deposit discrepancy before initiating discipline; failing to follow its progressive discipline policy; and failing to recognize that he repaid the City for the overpayment.

{12} The decision of the grievance board hearing officer is of record; however, the record on appeal does not contain a record of the grievance board hearing. The decision indicates that the hearing officer considered the propriety of Armijo's termination, as well as the City's adherence to its disciplinary policies and procedures. The hearing officer specifically found that Armijo's termination was

6

imposed for just cause and in accordance with the City's personnel rules. The questions addressed by the hearing officer overlap with the questions addressed in Armijo's contract action in that their disposition requires an examination of the facts surrounding Armijo's termination and of the City's personnel policies. Accordingly, we conclude that the claims arose from the same transaction.

{13} Where "two actions are the same under the transactional test and all other elements are met, [claim preclusion] bar[s] a subsequent action [if] the plaintiff could and should have brought the claim in the former proceeding." *Potter*, 2015-NMSC-002, ¶ 15. Claim preclusion "is a judicial creation ultimately intended to serve the interests of justice." *Kirby*, 2010-NMSC-014, ¶ 65. The essence of claim preclusion is the parties' full and fair opportunity to litigate the issues. *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 11, 139 N.M. 99, 128 P.3d 1076.

{14} Claim preclusion "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so." *Id.* (internal quotation marks and citation omitted). Our application of claim preclusion "does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted." *Id.* ¶ 10 (internal quotation marks and citation omitted). In the present case, Armijo's contract claim was based on his assertions that the City failed to follow the policies and

procedures set forth in its personnel handbook. These issues were within the purview of the grievance board hearing officer. Armijo was able to raise his contract claims during the grievance board proceeding, and "in the interest of judicial economy [he] should have done so." *Chavez*, 1998-NMCA-004, ¶ 28; *see Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶¶ 27-28, 274 P.3d 781 (recognizing that claim preclusion bars a claim that the plaintiff could have and should have asserted in a prior action).

{15} Armijo argues that he could not have asserted his contract claim before the grievance board because the board's hearing officer was limited in what it could consider. We disagree. Based on the record before us it appears that the City's personnel policy handbook requires the hearing officer to submit findings of fact and a decision to the human resources director within ten days of the closure of the grievance hearing record. According to the handbook, "[t]he [h]earing [o]fficer may take one of the following actions: [(1) a]ccept the [d]epartment [d]irector's decision; [(2) m]odify the [d]epartment [d]irector's decision; [(3) r]eject the [d]epartment [d]irector's decision." Nothing in the record indicates that the hearing officer is precluded from considering all of the facts and arguments available to Armijo in his breach of contract claims.

{16} We reject Armijo's contention that *Deflon v. Sawyers*, 2006-NMSC-025, 139 N.M. 637, 137 P.3d 577, and *State ex rel. Peterson v. Aramark Correctional Services, LLC*, 2014-NMCA-036, 321 P.3d 128, are analogous to this case and are instructive concerning the applicability of claim preclusion to employment claims. Both *Deflon* and *Peterson* are distinguishable. In both cases, claim preclusion was not applied because the parties in the first and subsequent actions were not the same. *See Deflon*, 2006-NMSC-025, ¶ 27 ("Because privity does not exist between the present [d]efendants and the defendant in the federal lawsuit, [claim preclusion] does not bar [the p]laintiff's state court lawsuit."); *Peterson*, 2014-NMCA-036, ¶ 33 (holding that claim preclusion did not apply where the "[p]laintiff's capacity in the two lawsuits differed"). As a result, an analysis of the remaining claim preclusion elements was unnecessary. *See Peterson*, 2014-NMCA-036, ¶ 33 (explaining that unless all four elements are met, claim preclusion does not bar a subsequent lawsuit; consequently, the parties' remaining claim preclusion arguments are not considered). Analyzing the elements of *issue* preclusion, which are distinct from the elements of claim preclusion, the courts in both *Deflon* and *Peterson* determined that the plaintiffs' claims were not precluded since the relevant issues to the subsequent actions were not litigated or necessarily decided in the prior actions. *See Deflon*, 2006-NMSC-025, ¶ 27; *Peterson*, 2014-NMCA-036, ¶ 49.

{17} Here, issue preclusion has not been raised. As to claim preclusion, there is no question that the parties are the same; therefore, an analysis of the elements was required. Having considered those elements, we conclude that claim preclusion does apply; that the issues raised in an administrative appeal and in the contract claim arise from the same transaction; and that Armijo had a full and fair opportunity to litigate his contract claim in the grievance proceeding.

{18} To the extent that Armijo relies on *Madrid v. Village of Chama*, 2012-NMCA-071, 283 P.3d 871, for the proposition that he may seek redress for the City's failure to provide procedural protections during the grievance board proceeding, we are not persuaded. *Madrid* is both factually and procedurally distinguishable from the present case.

{19} In *Madrid*, the plaintiff was discharged from his employment with the Village of Chama. *Id.* ¶ 2. The plaintiff requested a post-termination hearing in order to contest the allegations that led to his termination. *Id.* The appeal hearing was treated by the Village Council as a pre-termination hearing. *Id.* The next day, a letter was issued stating that the plaintiff was terminated at that time, even though the plaintiff had been terminated approximately one week prior and had not received any income from the Village since then. *Id.* The plaintiff then appealed the second termination

decision, and a post-termination hearing was conducted. *Id.* ¶ 3. The Village Council voted in favor of discharging the plaintiff from his position. *Id.*

{20} The plaintiff did not appeal that decision to the district court. *Id.* Instead, he filed a complaint for breach of implied contract, breach of the covenant of good faith and fair dealing, and wrongful discharge. *Id.* ¶ 4. Without a hearing, the district court granted the Village's motion to dismiss the complaint pursuant to Rule 1-012(B)(6) NMRA. *Madrid*, 2012-NMCA-071, ¶¶ 4-5. The plaintiff appealed to this Court. *Id.* The relevant question in *Madrid* was whether the district court had jurisdiction to hear the claims brought in an original complaint rather than in a Rule 1-075 NMRA appeal. *Madrid*, 2012-NMCA-071, ¶ 5. We concluded that the applicable ordinance in that case did not preclude the plaintiff from seeking compensatory damages in a separate contract claim. *Id.* ¶ 11. Our decision was based on the fact that the ordinance "d[id] not state what administrative remedies [we]re afforded to an aggrieved employee, and it contain[ed] no express language that the remedies [we]re or [we]re not exclusive." *Id.* And unlike the City's personnel policies at issue in this case, the ordinance at issue in *Madrid* did not provide for the modification of an adverse employment action. *Id.*

{21} Here, Armijo was afforded the opportunity to seek modification of the decision to terminate his employment. He has also availed himself of the opportunity to appeal

11

the grievance board's decision pursuant to Rule 1-074, which is the appropriate procedural mechanism for challenging an administrative decision. *See Paule v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240 (stating that in reviewing administrative decisions, reviewing courts must determine "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law"). However, Armijo also filed this contract claim in a separate proceeding in a different tribunal, which arose out of the same transaction. Then, after obtaining a favorable ruling on his contract claim, Armijo attempted to use the district court's judgment to preclude an adverse ruling in the administrative appeal.

{22}    This is precisely the type of situation that the doctrine of claim preclusion seeks to avoid. *See Moffat*, 2002-NMCA-067, ¶ 14 ("The purpose of our application of [claim preclusion] is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments."); *cf. Smith v. City of Santa Fe*, 2007-NMSC-055, ¶¶ 1, 24, 142 N.M. 786, 171 P.3d 300 (holding that a declaratory judgment action cannot be used "to circumvent established procedures for seeking judicial review of a municipality's administrative decisions" and recognizing "no sound judicial policy for allowing a party aggrieved by an

administrative decision to forego [sic] an available avenue of judicial review only to allow that same party to initiate judicial review in another form at some future date that no one can predict or rely upon with any certainty. Indeed, the efficient administration of justice requires just the opposite"). Armijo could have and should have brought all his claims related to his termination before the hearing officer in the interest of judicial economy.

**CONCLUSION**

{23}     For the foregoing reasons we conclude that claim preclusion barred Armijo's breach of contract claim. We reverse.

{24}     **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**